# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN



**GROVER SELLERS**

**ATTORNEY GENERAL**

Hon. Roy A. Barton
County Attorney
Calhoun County
Port Lavaca, Texas

Dear Sir:                      Opinion No. O-6014

Re: Clarification of Sea Wall
Remission Acts, granting
remission of taxes to City
of Port Lavaca and to Cal-
houn County.

We are in receipt of your letter of recent date read-
ing as follows:

"A few weeks ago Representative Howard Hertzog
and I called at your office in regard to a clarifi-
cation of our Sea-Wall remission acts and were in-
structed to see Mr. Gibson, who requested that I
write for an opinion in regard to the questions that
now came before us, which are as follows:

"In 1941 the 47th Leg. passed H. B. No. 7, Ch.
458, p. 750 of the session laws, granting the city
of Port Lavaca a remission of all taxes for a
period of 20 years for seawall and storm protection
purposes. A previous opinion of the department
had held that the act was constitutional and the
word "Harbors" was surplussage.

"In 1943, after the city had voted and sold
$300,000.00 dollars in bonds the Legislature passed
S. B. No. 185, Ch. 126, p. 208 session laws, amending
Sec. 3 of H. B. No. 7, Ch. 458, limiting the amount
of remission to the city of Port Lavaca to the amount
of bonds already voted and sold and provided that any
amount collected by the county tax assessor over and
above a sum sufficient to pay the principal, interest
and other legal charges, plus (a cushion) of 20 percent
of the annual requirements, until such a time as a reserve

of 2 years requirements have been accumulated in the sinking fund etc.

"The question that confronts the Calhoun County Tax Collector concerns the mechanics of transfering the funds received between the city and the county. Thus far all funds have been transfered to the city and none retained for the county! Another facter enters the picture, the city has not expended its funds received from the sale of the bonds but because of war necessity and the lack of available men and materials has invested its funds in War Bonds and are receiving about 2% percent interest, which of course partialy offsets the interest on the bonds.

"Question One. Should this interest be credited against the city in ariving at the cushion requirement?.

"S. B. 175, also amends Section 3 to provide an obligation upon the City Treasurer of the City of Port Lavaca, to make under oath at the end of each month an itemized statement to the County Tax Collector, disclosing the status of the seawall bond account, in order to enable the Tax Collector to allocate payment between the city and the county. That itemised statement is to be made on forms to be approved by the Comptroller of Public Accounts of the State. However no such forms have been requested by the city, no such forms have been furnished by Comptroller's department and the city Treasurer has failed to file any such monthly statement with the County Tax Collector.

"Question Two. Is it the duty of the Comptroller to furnish such forms, or is it the duty of the city Treasurer to prepare or work out some type of form with the Comptroller.

"Question Three. Is it the duty of the city treasurer to file such monthly form with the County Tax Collector.

"Question Four. Will it be right and proper for the County Tax Collector to refuse to pay and withhold all payments from the city until the sworn itemised forms are properly filed by the city Treasurer.

"Question Five. If the city treasurer fails to file the sworn monthly forms and the County Tax Collector continues to pay over all such collections to the city without regard to the limitations of S. B. 175, will both officials be subject to criminal action under Art. 89 of the Penal Code.

"Question Six. Should the County Tax Collector contact the State Comptroller and request a revision of forms in order that the provision of these two acts be properly carried into effect.

"Thus you see the muddled condition of the record and any good advice that you can give us will help including sending a copy of your opinion to the City Mayor and Treasurer of Port Lavaca, Texas."

Sec. 1 of S. B. 175 reads as follows:

"Sec. 1. That Sec. 3, Ch. 485, Acts of the R. S. of the 47th Leg., be, and the same is hereby amended so as to hereafter read as follows:

"'Sec. 3. Provided, however, that regardless of the foregoing provisions the amount donated to the City of Port Lavaca, Calhoun County, Texas, shall hereafter be limited to an amount not in excess of a sum sufficient to pay the principal, interest and other legal charges, plus twenty (20%) per cent of the annual requirements, until such time as a reserve of two (2) years' requirements have been accumulated in the sinking fund, on all bonds heretofore voted, sold, issued and delivered by the City of Port Lavaca, Texas, and paid for by the purchasers thereof, and now outstanding, under the authority of this Act. Any excess over that amount is hereby donated to Calhoun County, Texas, for the protection of that part of the county outside of the City of Port Lavaca, Texas, against calamitous overflows, by the construction of seawalls, breakwaters and levees. At the end of each month the Assessor and Collector of Taxes of Calhoun County, Texas,

shall make an itemized report under oath to the Comptroller of Public Accounts of the State of Texas, on forms to be furnished by the Comptroller, showing the amount of all ad valorem taxes collected by him for state general purposes upon real and personal property within the County of Calhoun, including rolling stock of railroad companies, as hereinabove provided, and he shall accompany the same with an itemized statement showing the full disposition of all taxes collected and disposed of as herein provided. Prior to the making of the aforesaid statement, at the end of each month the City Treasurer of the City of Port Lavaca shall under oath make an itemized statement to the Assessor and Collector of Taxes of Calhoun County, disclosing the status of current or past due requirements of principal, interest and reserve on bonds outstanding under authority of this Act. The said Assessor and Collector of Taxes shall thereafter forward his report to the Comptroller and shall make a like report to the City Treasurer of the City of Port Lavaca and to the County Treasurer of Calhoun County, Texas, and he shall pay over to the City Treasurer of the City of Port Lavaca an amount equal to but not in excess of the amount necessary for interest and sinking fund requirements in accordance with the sworn statement made by the City Treasurer, out of moneys collected by him during the month from state ad valorem taxes levied for general purposes.

"'Any excess moneys collected from said source, after deducting such amounts as are allowed by law for assessing and collecting said taxes and after the required payment has been made to the City Treasurer of the City of Port Lavaca as hereinafter provided, shall be paid by said Assessor and Collector to the County Treasurer of Calhoun County, Texas. On the occasion of each such remittance the City Treasurer of Port Lavaca and the County Treasurer of Calhoun County shall each, respectively, execute a receipt in duplicate showing the amount of money received by him, forwarding one executed copy to the Assessor and Collector of Calhoun County and another copy to the Comptroller of Public Accounts of the State of Texas. The County Treasurer shall place

all moneys received by him as herein provided in a
special account in the County Depository, to be known
as the Flood Control Account, and in order to accom-
plish all legal purposes for the use of such fund,
shall, under the control of the County Commissioners
Court of said County, have all of the powers and
duties as hereinafter provided for the City of Port
Lavaca.'"

We shall attempt to answer your questions in their
numerical order.

1. The amount of interest collected by the city
should be credited to the construction fund, since the money
invested in government bonds constitutes the construction fund
and not the interest and sinking fund. See Lawson v. Baker,
220 S. W. p. 272 following quotation: "Interest, according
to all the authorities, is an accretion to the principal fund
earning it and unless lawfully separated therefrom, becomes a
part thereof."

2. The law does not make it the duty of the Comp-
troller to furnish the forms for the City Treasurer to make
an itemized statement to the Assessor and Collector of Taxes
of Calhoun County, but simple provides that the treasurer shall
under oath make an itemized statement to the Assessor and Col-
lector of Taxes of Calhoun County, disclosing the status of
current or past due requirements of principal, interest and
reserve on bonds outstanding under authority of the Act. The
treasurer simply makes an affidavit of the requirements above
mentioned and furnishes same to the County Assessor and Col-
lector.

3. It is the duty of the treasurer of the City
to file such affidavit monthly with the County Assessor and
Collector.

4. The County Assessor and Collector is not author-
ized to pay any money to the city until such affidavit is filed
with him. There is no form required, but the several items
mentioned in the law should be included in the affidavit.

5. Section 6 of Ch. 185, Acts R. S. of 47th Leg. con-
tains the following language: "The use and diversion of moneys
herein granted for any purpose other than the payment of interest
and principal on the bonds voted hereunder or invested in accordance

with applicable laws is hereby prohibited and the violation of this section shall constitute a misapplication of public money and the person or persons so offending shall be punished as provided for in Art. 86 of the Penal Code of the State of Texas."

6. The County Tax Collector should have forms approved by the Comptroller. It may be that he can use the same forms he has been using in making reports under the law prior to the amendment, since the only difference under the amendment is the requirement that he shall show the full disposition of all taxes collected --that is, he will have to show how much he remitted to the City of Port Lavaca and how much to the County Treasurer. Heretofore, he has been required to show only how much he had remitted to the City of Port Lavaca, and under the amendment, he will have to show the amount remitted to the County Treasurer.

The law also requires the City Treasurer and the County Treasurer to issue receipts in duplicate, one to the County Assessor and Collector and the other to be forwarded to the Comptroller.

Trusting that we have satisfactorily answered your questions, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By      /s/    C. F. Gibson
                Assistant

CFO:pw:bb

APPROVED MAY 18, 1944
/s/ G. P. Blackburn
(Acting) ATTORNEY GENERAL OF TEXAS

APPROVED OPINION COMMITTEE
By- O. S., Chairman